In the matter of the probate of the last will and testament of
CHARLES L. KUGLER, deceased.

[Decided October 4th, 1938.]

*Mr. Merritt Lane,* for the appellants.

*Messrs. Winne & Banta,* for the respondent M. K. Piver.

*Mr. Thomas L. Hanson, Mr. John Hanson* and *Mr. Charles Nielson,* for the respondent Lydia Rupprecht.

BERRY, VICE-ORDINARY.

This is an appeal by those named as executor and executrix in a paper-writing alleged to be the will of Charles L. Kugler, deceased, who died on April 23d, 1936. That writing is dated

September 11th, 1935, and was admitted to probate as the last will and testament of the decedent by the surrogate of Monmouth county on May 5th, 1936. On appeal to the orphans court the surrogate's order of probate was set aside and probate of the will denied on the ground that the proofs did not show that the decedent either signed or acknowledged his signature in the presence of witnesses as required by the statute.

By consent of counsel, the orphans court referred the controversy to a master before whom proofs were submitted and who found that the decedent had not signed the will nor acknowledged his signature in the presence of witnesses. The master's report was adopted by the orphans court which entered a decree accordingly. This appeal is from that decree.

The decree of the orphans court might well be affirmed for the reasons stated in the master's report. Although additional testimony was submitted in this court, it was not of sufficient weight or importance to change the result reached by the master, and I agree entirely with his reasoning and conclusions. However, in view of the voluminous briefs of counsel and the reliance of counsel for appellant on *In re Halton, 111 N. J. Eq. 143,* in support of his argument touching the credibility of the witnesses to the alleged will, I have concluded to shortly state the reasons for my conclusion that the decree of the orphans court should be affirmed.

The pertinent portion of the statute touching the execution of wills is as follows:

"Except as to non-cupative wills, a will to be valid shall be in writing and signed by the testator, whose signature shall be made by the testator or the making thereof acknowledged by him, and such writing declared to be his last will, in the presence of two witnesses present at the same time, who shall subscribe their names thereto as witnesses in the presence of testator." *Rev. Stat. 3:2-3.*

Everything required to be done by the testator must precede, in point of time, the subscription of the testamentary witnesses. It is not necessary that the testator actually sign in the presence of the witnesses, or that they actually see him

sign the will, provided he acknowledges the signature to the will to be his in the presence of both witnesses. *In re Halton, supra* (at *p. 152*).

Three witnesses signed the alleged will. On the day that it was offered for probate they were taken to the office of the proctor for the executors in Freehold. Printed forms of the usual affidavits of witnesses to a will were obtained from the office of the surrogate and completed in the office of the proctor. He, with the witnesses, the executor and executrix, then went to the office of the surrogate. Miss Hendrickson, the special probate clerk of Monmouth county, administered the oaths to the witnesses. It does not appear definitely whether or not they signed their respective affidavits in her presence. She did not sign the jurats and the surrogate was not present. Some time later these forms of affidavits were presented to the surrogate and he affixed his signature to the jurat which recited that each of the affidavits was sworn to and subscribed before him. Obviously this recital was false. Each of the affidavits contains the statement that the affiant saw the testator sign and seal the alleged will and heard him publish, pronounce and declare the writing to be his last will and testament. When these witnesses subsequently appeared before the master in the orphans court to narrate the circumstances under which they affixed their names as witnesses to the alleged will, they were first sworn with due solemnity and then they testified and repeated unequivocally under cross-examination that Mr. Kugler did not sign the instrument, nor affix nor acknowledge his signature in their presence; and that he did not publish or declare the document to be his last will in accordance with the requirements of the statute. The testimony of all of the witnesses was to the same effect and it remained unshaken upon cross-examination. The fact that the affidavits of these witnesses offered on the application for probate before the surrogate contained the statement that the decedent signed and sealed the document, and pronounced and declared it to be his last will and testament, and that they swore to the contrary before the master is seized upon by counsel for the appellant to discredit them as wit-

nesses in this controversy; and *In re Hallon, supra,* is cited in support of this argument; but the case is not parallel. I there dealt with a witness who had condemned himself out of his own mouth and who appeared unworthy of belief. The will there involved had no attestation clause. One of the witnesses to that will testified that all of the requisite formalities had been observed in its execution; the other, that it had not. I chose to believe the former because there was nothing to discredit him as a witness while the latter had discredited himself. The authorities upon which I there relied and from which I quoted are still of unquestioned standing. To them may be added *Beck* v. *Lash* (*Ill.*), *136 N. E. Rep. 475.* But they have no application here. Although an attestation clause appears on the document here offered for probate, that clause was not signed by the witnesses. And there is no conflict in their testimony here. When the circumstances attending the submission of proofs to the surrogate on application for probate of the paper-writing here involved are understood, it cannot be said without qualification that these witnesses swore to conflicting statements on different occasions. The proceedings before the special probate clerk were very short and summary. There was little, if any, solemnity to the administration and execution of the oaths. The three witnesses were sworn *jointly* by the clerk who asked them the formal questions in a perfunctory manner. Her testimony fully supports this conclusion and the testimony of the three witnesses who were thus sworn fortifies it and indicates clearly, I think, that they did not appreciate the importance of the ceremony nor realize the import of the language of the affidavits. While the oath was administered by the special probate clerk she did not sign the jurat; that was signed later by the surrogate who neither administered the oaths nor saw the affiants. This method of taking affidavits may be customary in the office of the surrogate of Monmouth county, as the special probate clerk testified, but it was condemned in the case of *In the Matter of Joseph B. Breidt and Jacob Lubetkin, 84 N. J. Eq. 222,* in which the late Chancellor Walker (at *p. 226*), said:

"The language of a jurat is alone sufficient to convey to any intelligent mind exactly what has to be done in the way of administering and certifying an oath. It says 'sworn to and subscribed before me,' &c. That means one, and only one, thing, namely, that the person making the oath was before—that is, was in the presence of the official who administered it. I do not say that an affiant may not sign his affidavit out of the presence of the officer taking it, and before swearing to it, acknowledge the signature to be his. But there is no way in the law whereby an officer authorized to take an oath may certify that he has done such an act when in fact he has not, and in the nature of things there can be no such a proceeding as the absent administration of an oath or the administration of an absent oath. The thing is perfectly incongruous and impossible. The administration of an oath means something or nothing. It cannot be distorted; there is no room for construction, and for a violation of the law in this regard there can be no excuse."

While the evidence is conflicting as to where these affidavits were signed, it is certain that they were neither signed nor sworn to before the surrogate and there is no value to such a supposititious oath. The practice thus exemplified is again condemned. It is not difficult to understand how and why these witnesses paid little attention to the proceedings in the office of the deputy surrogate, did not read the affidavits and did not know what statements they contained. That was the purport of their testimony touching this episode, and that testimony was given in a manner compelling belief. An entirely different picture was presented when they testified before the master. The master had the benefit of personal observation of the witnesses, and he reported that they did not clearly understand the contents of the oaths in the surrogate's office and he felt confident that the testimony which they gave before him was true. A careful reading of the testimony convinces me that the master reached the right conclusion. It is not necessary to recount in detail the testimony of these witnesses touching their signatures. It was to this effect: Mr. and Mrs. Bennett, two of the witnesses,

resided next door to the testator who was an officer of the township in which they resided. He frequently asked them to "witness" papers. In the early evening of the day that the witnesses affixed their signatures to the document offered for probate, the decedent came into the Bennett home and asked them to witness a paper which he had in his hand; it was folded in such a manner that they saw no writing upon it except the word "witness." The decedent did not then explain what the paper-writing was. Mrs. Bennett signed her name first and then Mr. Bennett signed. Just as he was completing his signature, the other witness, Mr. Birnbauer, who was a boarder in the Bennett home, came into the room and decedent asked him to also sign as a witness. He demurred as he did not know what the paper was, and then for the first time decedent said that it was his will. The third witness then signed. None of these witnesses ever saw the signature of the decedent. He did not sign the document in their presence nor acknowledge his signature before them. The paper upon which they wrote their names was folded to the size of a small envelope. The original will is written in the handwriting of the decedent, on two sides of a sheet of paper of foolscap size. At the bottom of the second page is written the following: "In witness whereof I Charles L. Kugler the testator have hereunto set my hand and affixed my seal this 11th day of Sept. 1935." Sufficient space for a signature is then left and directly under this space and at the extreme bottom edge of the sheet is the word "Seal." At the top of the left-hand margin of the second page of this paper, and at right angles to the body of the writing, appears the word "witness;" and under this word the signatures of the three witnesses. On the same margin and beginning slightly above the center is written, at right angles to the body of the writing, the usual attestation clause. Written under the attestation clause is the date "Sept. 12, 1935," and the signature "Charles L. Kugler." I have inspected the original will on file in the office of the secretary of state and it bears convincing proof of the truth of the testimony of the witnesses touching the manner in which the paper was

folded when they signed. All the witnesses testified that after they had signed the document the testator placed it in his coat pocket and that was the last they saw of it until it was offered for probate. While the evidence is convincing that the alleged will was not signed by the decedent and his signature was not acknowledged by him in the presence of two witnesses as required by the statute, the document itself compels the inference that the decedent's signature had not been affixed at the time of the signing by the witnesses. The printed copy of the will on pages 3, 4 of the state of the case would make it appear that Kugler signed at the foot of the document on September 12th, 1935, and that the witnesses appended their signatures to the attestation clause; but an examination of the photostatic copy of the will annexed to the state of the case as an exhibit, and of the original of the alleged will itself, discloses that the testator did not sign the document in the space provided for his signature. While the word "seal" appears at that point, there is no signature. He actually signed the attestation clause, but not the alleged will. And the witnesses did not, as appears from the printed record, subscribe to that attestation clause. No explanation of this incorrect and improper printing is offered; but as a photostatic copy of the will is also included in the state of case, it is assumed that no deception or misrepresentation was intended. Assuming that the witnesses placed their signatures upon the paper on September 11th, 1935, the day of its date (the proofs are not definite), the date under the attestation clause which was signed by the decedent would indicate that he affixed his signature to the document a day later. At any rate, he did not sign in the presence of the witnesses, nor did he acknowledge his signature in their presence if it was then on the paper. It is a fair inference that the document was written on September 11th and presented on that day to the witnesses for their signatures, and that the decedent wrote the attestation clause and signed it on the following day. This theory agrees entirely with the testimony of the witnesses.

Even though decedent was possessed of a sizable estate he did not seek the advice of counsel either in the drawing or execution of his proposed will. He wrote it in his own handwriting and then assumed the direction of its execution and attestation. He failed because he did not comply with the requirements of the statute. He did not sign nor acknowledge his signature in the presence of two witnesses present at the same time. *Bioren* v. *Nessler, 77 N. J. Eq. 560; In re Post, 118 N. J. Eq. 331.* Nor did he publish or declare the document to be his will, as required by the statute (*In re Halton, supra*); the publication, if any, did not precede in point of time the subscription of two of the witnesses.

I will advise a decree affirming the decree of the Monmouth county orphans court.